**DANIEL INTERNATIONAL CORPORA-
TION, Plaintiff–Appellee,
Cross–Appellant,**

v.

**FISCHBACH & MOORE, INC., et al.,
Defendants–Appellants,
Cross–Appellees.**

No. 89–6102.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1990.

Rehearing and Rehearing En Banc
Denied Dec. 14, 1990.

Daniel J. Davis, Keith C. Zagar, Dallas,
Tex., for defendants-appellants, cross-ap-
pellees.

Jesse C. Belcher, Thomas C. Coker, Jr.,
Haynsworth, Marion, McKay & Guerard,
Greenville, S.C., Mike Hatchell, Ramey,
Flock, Hutchins, McClendon & Crawford,
PC, Tracy Crawford, Ramey, Flock, Hutch-

ins, McClendon & Crawford PC, Tyler, Tex., *for plaintiff-appellee, cross-appellant.*

Before CLARK, Chief Judge, REAVLEY and KING, Circuit Judges.

CLARK, Chief Judge:

These appeals come from a judgment in a diversity-based contract action which was tried to the court. Finding that the district court abused its discretion in striking this matter from its jury calendar shortly before trial commenced, we vacate the judgment and remand for trial to a jury. Because the issue is one of law likely to recur upon retrial, we also hold that the contractually stipulated profit margin was a valid liquidation of damages, not a penalty.

## I.

### A.  The Substantive Dispute

Daniel International Corporation (Daniel) was the prime contractor on a penitentiary construction project for the State of Texas. Daniel sued Fischbach & Moore (F & M), its electrical subcontractor on the project, and F & M's bonding company, National Union Fire Insurance Company (National Union). The complaint alleged breach of the subcontract, and sought damages and injunctive relief. F & M denied having breached the contract and counterclaimed alleging breach by Daniel.

The prison construction project was to be developed under strict time deadlines pursuant to the order issued in *Ruiz v. McCotter*, 661 F.Supp. 112 (S.D.Tex.1986). The completion dates were essentially inflexible since failure to meet the deadlines could require release of over 2,000 prisoners. The contract included substantial liquidated damages for failure to complete on schedule.

The subcontract between F & M and Daniel required completion of the electrical work in time to allow the entire project to be substantially complete by the scheduled dates. No extension was allowed for weather delays. Written notice of any event anticipated to cause delay was required to be given within five days of its occurrence. The contract also allowed Daniel to adjust, monitor and enforce F & M's completion schedule. Any dispute concerning delay-related claims for extra time or money did not relieve F & M of the obligation to continue to prosecute its work without delay. Other subcontracts contained similar terms.

The trial court found that F & M breached its contract by failing to perform in a timely and proper manner. The court also found that Daniel incurred reasonable and necessary costs of $5,970,518.12 in completing F & M's subcontract work. However, the court denied Daniel a ten percent mark-up for profit on these expenses. The court found that the mark-up, although provided for in the subcontract, was punitive in nature. The court set off Daniel's expenditures against the unpaid balance due F & M, and awarded Daniel net damages of $2,842,104.06 plus prejudgment interest of $477,567.43. The court also determined that reasonable attorneys' fees and post-judgment interest from the date of award should be fixed later. F & M was ordered to take nothing on its counterclaim.

### B.  The Procedural Dispute

Daniel filed its amended complaint on March 10, 1987. F & M did not include a jury demand in its answer and counterclaim. But, on July 21, after the court had placed the matter on its non-jury calendar, F & M filed its first jury demand pursuant to FED.R.CIV.PROC. 38 and 39(b). Daniel interposed no objection. The district court made no recorded response to this demand.

On October 2, F & M moved to add Federal Insurance Company (FIC), Daniel's surety under the contract, as counter-defendant. This motion again requested a jury trial pursuant to Rule 38. Daniel's consent to the addition of FIC made no response to the jury demand. On October 9, the district court ordered FIC joined. This order bears the notation "JURY TRIAL DEMANDED." The order also states that the court reviewed F & M's entire motion, and "[a]fter reviewing same, the

Court is of the opinion that the Motion is well taken and should be, in all things, granted." F & M filed its amended counterclaim in which it added FIC as a party defendant, and once more demanded a jury trial.

The case originally appeared on the court's non-jury calendar for November 30, 1987. Following a joint motion for continuance, on February 23, 1988 the matter next appeared on the court's May jury calendar. Following another joint motion for continuance, the case was rescheduled on July 25, where it appeared on the December non-jury calendar. On August 4, the court *sua sponte* placed the case on the jury calendar. On September 27, Daniel filed a motion to strike F & M's jury demands, its first record objection to any of the preceding jury demands. On November 14, the court granted the motion, removed the case from the jury calendar and placed it once again on its non-jury calendar. The court denied F & M's request to reconsider the matter or to certify the issue for interlocutory appeal. The action was tried without a jury.

### II.

F & M appeals. Daniel cross-appeals. F & M attacks the court's ruling that Daniel followed contractually required procedures when terminating F & M, and the award of prejudgment interest. Daniel argues that the district court erred in computing judgment interest, denying the ten percent contractual mark-up, and reducing Daniel's damages under other contract provisions. Our analysis begins with the issue of whether the court abused its discretion in striking F & M's jury demands and removing the case from the jury docket three months before commencement of trial.

### A. *Rule 38*

■ F & M argues that it was entitled to a jury trial as of right pursuant to demands made under FED.R.CIV.PROC. 38(b). Rule 38(b) provides in full:

Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

This rule embodies the right conferred by the seventh amendment. FED.R.CIV.PROC. 38(a). However, this right may be waived by failure to make the demand within the ten day period. *Id.* 38(d).

The ten day period runs from filing of the last pleading addressing the issue upon which trial is demanded. Here, all issues were joined upon Daniel's reply and counterclaim of April 16, 1987. F & M's jury demand was not timely. F & M waived its right to demand a jury trial under Rule 38(b).

■ F & M argues that its tardiness was excused because Daniel served only its "local" counsel and not its "lead" counsel. F & M calls attention to the fact that Daniel mistakenly certified it had served all counsel of record. We agree with Daniel that its mistaken certificate does not excuse F & M's duty to comply with Rule 38(b).

■ F & M argues that Rules 5(a) and (b) require that pleadings be served on all counsel of record. We disagree. The burden is to serve all other *parties.* This does not require service on each of several counsel appearing on behalf of a party. F & M does not contend that its local counsel failed to keep it advised of pleadings served on him. We note that F & M's pleadings both before and after the joinder of issues were signed by local counsel. In the absence of any assertions that Daniel somehow succeeded in deliberately misleading F & M, service upon one, but not all, of its counsel is effective service. *See Cooper v. Lewis*, 644 F.2d 1077, 1082 (5th Cir.1981) (each party considered to have notice of all facts of which its attorney may be charged with notice).

■ F & M also argues that the jury demand it made was sufficient under Rule 38(b). However, the only pleading on which a demand was endorsed merely added a party to its counterclaim. At most,

this added only an additional right to recover against FIC, Daniel's surety. It did not plead any new issues of fact or raise a new issue of law. An amendment not introducing a new issue will not give rise to a right to demand for a jury trial. *Guajardo v. Estelle*, 580 F.2d 748, 753 (5th Cir.1978). The amendment must introduce a new issue and not merely add a new theory of recovery. *Fredieu v. Rowan Companies, Inc.*, 738 F.2d 651, 653 (5th Cir.1984). All issues were joined when F & M filed its reply and counterclaim.

### B. Rule 39

■ Determining that F & M failed to comply with the time requirements of Rule 38 does not end our inquiry. Rule 39(b) states:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

FED.R.CIV.P. 39(b). This rule grants the district court discretion to relieve a party from waiver of a jury trial under Rule 38. *Swofford v. B & W, Inc.*, 336 F.2d 406, 408 (5th Cir.), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1964). However, the seventh amendment confers a fundamental right. This modifies the usual approach to review of abuse of discretion. "[W]hen the discretion of the court is invoked under Rule 39(b), the court should grant a jury trial in the absence of strong and compelling reasons to the contrary." *Id.* at 409. A motion for trial by jury under this rule "should be favorably received unless there are persuasive reasons to deny it." *United States v. Unum*, 658 F.2d 300, 303 (5th Cir.1981).

The Eleventh Circuit distilled five factors that district courts should consider in the exercise of discretion under Rule 39(b):

> (1) whether the case involves issues which are best tried to a jury;

> (2) whether granting the motion would result in a disruption of the court's schedule or that of an adverse party;
> (3) the degree of prejudice to the adverse party;
> (4) the length of the delay in having requested a jury trial; and
> (5) the reason for the movant's tardiness in requesting a jury trial.

*Parrott v. Wilson*, 707 F.2d 1262, 1267 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983). *See also Quillin v. Penrod Drilling Co.*, 648 F.Supp. 462, 463–64 (E.D.Tex.1986).

Application of *Parrott*'s considerations to the case at bar shows the following. First, this case was a contract dispute. Despite the fact that it involved extensive documentation, its operative issues were well within the comprehension of a jury. *See Pinemont Bank v. Belk*, 722 F.2d 232, 237 (5th Cir.1984). These sorts of issues—who was responsible for delay, what notice was given, and the reasonableness of completion costs—were the sort usually tried to a jury.

Second, there could be no disruption of the district court's or Daniel's schedule. The case had already been placed on the jury calendar, where it had remained for nearly seven months prior to Daniel's motion to strike it from that calendar. The record indicates that the district court was prepared to try this case to a jury. Refusing Daniels' motion to strike the jury demand "would not have unduly affected the court's administration of its business. It would presumably have required no change on the court's part." *Id.*

Third, given the length of time the case was carried on the jury calendar, no prejudice to Daniel was shown. Indeed, any prejudice here would be to F & M, which was reasonably entitled to expect its case would be tried to a jury. Daniel cannot claim it was taken by surprise in its preparations for trial. Long before trial, it assumed the role of the movant seeking to change the jury trial *status quo*.

Fourth, F & M did delay over four months before filing its first jury demand. However, Daniel interposed no objection to

the demand when it was filed. More than one year later—after the district court had entered an order arguably granting F & M's motion and placing the case on its jury calendar—Daniel objected. F & M's jury demand was made over 18 months before the case actually went to trial. It clearly was not a delaying tactic brought on the eve of trial. *Cf. United States v. Unum, Inc., supra,* 658 F.2d at 302–03.

Fifth, the reason for the movant's tardiness does not appear except for its contention regarding service on "lead" counsel, which we rejected above. However, our previous decisions analyzing delay and inadvertence have generally involved review of whether the district court should place the case on its jury calendar. *See, e.g., United States v. Lochamy,* 724 F.2d 494 (5th Cir.1984). That is not in dispute here. The district court did place the matter on its jury calendar. This, together with its October order granting F & M's entire motion which expressly included a request for trial by jury, indicates the court's conclusion that any antecedent delay was of no consequence. Instead of F & M attempting to secure a jury trial, we here have Daniel moving to *strike* the case from the jury calendar. The fair question is why Daniel was tardy in raising the issue, and whether Daniel was the party whose inadvertence allowed the matter to appear and remain on the jury calendars.

In *Cox v. C.H. Masland & Sons, Inc.,* 607 F.2d 138 (1979), we reversed the district court's decision to remove a case from its jury calendar, although it had initially granted the plaintiff's untimely demand for jury trial. The case involved neither delay nor inconvenience to the court; the defendant was not prejudiced or surprised; and although untimely, the demand was made sufficiently early to avoid disruption to the court, the trial schedule or the parties' preparation. *Id.* at 144. Daniel correctly points out that the district court in *Cox* had erroneously removed the case from the jury calendar because of a mistaken belief that the issues presented were not triable to a jury. This distinction is of no import here. The issues in today's dispute were triable by a jury. Removal of this case

from its jury calendar even more clearly demonstrates an abuse of discretion than the action taken in *Cox.*

In *Pinemont Bank v. Belk,* 722 F.2d 232 (5th Cir.1984), we also reversed a district court for abuse of discretion under Rule 39(b). In *Pinemont Bank,* the Bank's counsel on the cover sheet of its amended complaint mistakenly marked that it demanded a jury trial, although it made no formal jury demand therein. Apparently without reviewing the complaint, the court's clerk placed the matter on the jury calendar. Therefore, the defendant saw no need to make any jury demand. Without ruling on whether this notation on the cover sheet satisfied Rule 38, we held that the district court abused its discretion under Rule 39(b) by removing the case from the jury calendar. Although no formal jury demand had been made, "[u]ntil the pretrial conference, held one week before trial, the district judge had the impression that this case was to be heard by a jury. His belief, coupled with the nature of this case and the events which led to Belk's filing of his Rule 39(b) motion, convinces us that no 'strong and compelling reasons' existed for the district court's denial of the Rule 39(b) motion." *Id.* at 236.

Daniel also correctly notes that *Pinemont Bank* hinged upon what amounted to a mistake by the nonmovant, which was compounded by the court clerk's own error. This factor makes no difference here. Mistake is not involved. Although F & M's Rule 38 jury demand, made when it added FIC as a party, was insufficient under Rule 38, F & M had previously placed before the court a formal jury demand under both Rules 38 and 39(b), upon which the district court had yet to rule. When the district court ordered FIC joined as a party, it granted F & M's motion "in all things." It also noted, presumably for the clerk's benefit, "JURY TRIAL DEMANDED." The next docket prepared by the clerk listed the case on the jury calendar. Daniel interposed no objection at that time. F & M was entitled to conclude that the district court had recognized and approved its jury demand. This conclusion is reinforced by

the court's later action in placing the case on the jury calendar *sua sponte,* after it was inadvertently scheduled on a later non-jury calendar.

"Technical insistence upon imposing a penalty for default [under Rule 38] by denying a jury trial is not in the spirit of the rules." 9 C. WRIGHT & A. MILLER, *Federal Practice and Procedure* § 2334 at 115–16 (1971). This analysis should not be construed as departing from our rule that the movant's "mere inadvertence" in not making a timely demand under Rule 38 provides no justification for invoking Rule 39(b). *Bush v. Allstate Insurance Co.,* 425 F.2d 393, 396 (5th Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 64, 27 L.Ed.2d 64 (1970); *Fredieu v. Rowan Companies, Inc.,* 738 F.2d 651, 654 (5th Cir.1984). However, much more than F & M's inadvertence was present here. It is the actions of Daniel and the court which weigh so heavily in our Rule 39(b) calculus.

Notwithstanding the tremendous efforts, time and expense incorporated in the prior bench trial, the district court's order striking this action from its jury calendar was an abuse of discretion. Consequently, we must vacate the judgment of the district court and remand this action for a new trial.

### III.

Daniel argues that the district court erred as a matter of law when it denied Daniel a contractually specified profit margin on work done to complete the subcontract after F & M's breach. Because this significant matter could recur on retrial, sound judicial husbandry indicates we should reach and rule on it now.

█ Whether a liquidated damages provision impermissibly serves as a penalty is a question of law for the court. *Farmers Export Co. v. M/V Georgis Prois, Etc.,* 799 F.2d 159, 162 (5th Cir.1986). The provision at issue here reads:

Upon completion and final acceptance of the Work, Contractor will determine the total expense incurred and accrued in completing the Work (including without limitation, additional overhead and legal expenses incurred and accrued by Contractor to effect such takeover and to complete the Work, plus a mark-up for profit in the amount of 10% on the cost of the Work performed by Contractor's forces).

To determine whether this liquidated damages provision operates as a penalty requires satisfaction of two factors. First, whether the parties at the time of contracting believed proof of loss would be difficult. *Farmers Export,* 799 F.2d at 162. The greater the difficulty, the more leeway the court will allow when determining, second, whether the amount fixed is reasonable. It is reasonable "if it approximates the actual loss that has resulted from a particular breach, even though it may not approximate the loss that might have been anticipated under other possible situations, *or* if the breach approximates the loss anticipated at the time of making the contract, even though it does not approximate the actual loss." *Id.* (emphasis in original). The provision at issue meets both of these factors.

Assuming that Daniel establishes that F & M defaulted in breach of its contract and Daniel had to take over performance, proof of actual lost profits would be difficult and would rely on a number of contingencies, none of which can be demonstrated objectively. If Daniel claimed it lost profits because it had to forego other projects, issues might arise as to what it would have bid and what its costs of performance on these other projects might have been. Such hypothetical offers of proof would be difficult to compile and verify. If Daniel was caused to perform what F & M contracted to do, it is obvious Daniel would lose the opportunity to employ its resources profitably elsewhere. It would either have had to send its own workers to Texas to complete F & M's obligations under its contract, or paid another contractor to do the work. Clearly, in the latter case the hired contractor's profit would be part of the completion expense.

█ If the amount contracted for by the parties is determined to be reasonable, the

only permissible conclusion is that the parties intended the payment to serve as liquidated damages. *Farmers Export,* 799 F.2d at 163. We have recently held that ten percent profit was reasonable and customary in regard to contract work. *See United States of America for the use and benefit of Control Systems, Inc. v. Arundel Corp.,* 896 F.2d 143, 147–48 (5th Cir. 1990). In any event, the burden of proving that a contract provision operates as penalty rather than as a liquidation of damages is upon the party urging the penalty construction. *Farmers Export,* 799 F.2d at 162. F & M did not carry that burden at the bench trial.

At trial, Daniel presented evidence that ten percent was a reasonable profit for the type of work involved. F & M put on no evidence contradicting this testimony or showing that it was intended as a penalty. Since the ten percent profit mark-up specified here was reasonable, the contract provision should have been construed as liquidated damages, not as a penalty. If Daniel proves both the antecedent breach by F & M that would trigger its application, and the reasonableness of the expenses incurred in completing F & M's work, the district court on remand should give effect to this provision.

### IV.

The judgment appealed from is vacated and the cause is remanded for trial by a jury. All costs of the present appeal shall be divided equally between the parties.

VACATED AND REMANDED.